<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| ARTHUR BYARD, | : | |
| | : | Civil No. 07-5069 (FSH) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| BRUCE A. HAUCK, | : | |
| | : | |
| Respondent. | : | |

---

**APPEARANCES:**

Arthur Byard, <u>Pro</u> <u>Se</u>
#130732/863469B
3-Wing/Cell #309
Northern State Prison
P.O. Box 2300
Newark, NJ 07114

Steven E. Braun
Office of the Passaic County Prosecutor
401 Grand Street
Paterson, NJ 07505
Attorney for Respondent

**HOCHBERG**, District Judge

Petitioner Arthur Byard, a prisoner currently confined at Northern State Prison in Newark, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is Administrator Bruce A. Hauck.

For the reasons stated herein, the petition must be denied.

**BACKGROUND**

1.   Factual Background

As stated in the opinion of the Superior Court of New Jersey, Appellate Division:[1]

> At the time of the alleged incidents Jose Muñoz (Muñoz) owned and operated Nanny's Grocery Store located at 54 North 3rd Street in Paterson.  Muñoz testified that he knew defendant.  On September 5, 1995, Muñoz's car was parked on the street directly in front of Nanny's.  From inside the store, Muñoz saw defendant on the roof of his car while four other men were playing cards on its hood.  Muñoz approached the men and asked them to move away from his car. At that time, Muñoz noticed the roof of the car had been dented.  As he was returning to the store Muñoz heard one of the men say "f..k him."  Muñoz then called the police.
>
> After he called the police, Muñoz saw defendant throwing glass bottles at his car, one of which broke the windshield.  As a result, Muñoz called the police again.  Almost thirty minutes later the police arrived on the scene and defendant ran away.
>
> Later that day, after the police had left, defendant returned to Nanny's.  Defendant yelled, "m ....r f ....r, you calling the police on me, you trying to get me locked up," and began throwing glass bottles into the store toward Muñoz.  In addition, defendant yelled to Muñoz, "I'm going to kill you, m .... r f ....r."  After throwing the bottles, defendant approached the store clerk behind the counter, Ruben Acevedo, punched him in the face and began turning over candy and cake racks.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

The police were again called.  When the police returned to Nanny's, they saw defendant crossing the street.  The police pulled the police car alongside defendant and attempted to engage him in conversation but he continued walking away.  When the police stopped their car, defendant ran.  The police gave chase but were unable to catch up with defendant.

The police returned to Nanny's and questioned both Muñoz and Ruben Acevedo.  The officers told Muñoz to go to the Paterson Police Department to file a complaint against the defendant.  The following day, September 6, 1995, at the police department, Muñoz was directed to the Paterson Municipal Court where he signed a malicious damage complaint against defendant.

Teresa Whitfield (Whitfield) testified about the events surrounding a fire at the M & B Grocery Store on September 11, 1995.  She testified that in the early morning hours of September 11, 1995, defendant was smoking blunts-cigars filled with marijuana and laced with cocaine-with her and another woman identified only as "Chickie."  Whitfield was a long-time drug addict who claims to have known defendant from grammar school and from the Christopher Columbus Projects (CCP) where they both resided at the time.  According to Whitfield's testimony, the three were smoking the blunts near the M & B Grocery Store located at One Circle Avenue in Paterson about one block from Nanny's.

Whitfield testified that defendant complained to the two women about being harassed by the grocery store owner who called the police on him.  Defendant complained about losing his drug stash as a result of the incident and expressed his desire to "get the m ....r f ....r," and that he wanted to "torch the place."  Although at the time defendant did not indicate which place he wanted to torch, Whitfield offered to do it for $75.

According to Whitfield, defendant urged her to use gasoline but she refused, instead retrieving alcohol from an acquaintance living in the CCP.  Whitfield testified that she then proceeded to the M & B Grocery Store, splashed the alcohol on the side of the building and lit it with a match.  Upon returning to CCP, Whitfield was confronted by defendant who said "it was the wrong f. ....g store."  Defendant then demanded

3

that Whitfield return to burn the "right store." She
refused.

The fire at the M & B Grocery Store was reported
to the Paterson Fire Department (PFD) at 2:50 a.m.
September 11, 1995.  The fire was located on a wooden
porch at the back of the building which housed the M &
B Grocery Store and two apartments above it.  The PFD
extinguished the fire and, suspecting foul play, called
for a fire investigator.  Paterson Fire Investigator,
Andrew Morabito, and Passaic County Criminal
Investigator, Joseph Phillips, were called to the
scene.  Investigator Morabito detected an odor of
gasoline and discovered a burned plastic container,
also smelling of gas, with a "shirt" melted into it.
Based upon his investigation, Morabito determined the
fire was started by a "Molotov cocktail", a container
containing a flammable liquid with a wick stuffed into
the opening.  The wick is lit before the container is
thrown.

Defendant was charged with the following crimes as
a result of the September 11, 1995 fire at the M & B
Grocery Store:  first-degree arson for hire at Nanny's;
second-degree attempted aggravated arson at Nanny's;
and second-degree aggravated arson at the M & B Grocery
Store.  He was found not guilty of those charges.

On September 13, 1995, there was another fire,
this time at Nanny's.  Defendant contends that the
trial court erred in admitting evidence of this fire
because he was not charged in connection with this
fire.  The evidence which was admitted was as follows.
At 1:09 a.m. on September 13, 1995, the PFD was
dispatched to a fire at Nanny's.  Although no fire was
visible when the fire department arrived, there was
smoke coming from the flat roof of the one story
building.  A small fire was extinguished by the PFD.  A
cursory investigation was conducted that night and the
PFD determined the fire to be merely rubbish burning on
the roof.  The Chief on the scene did not feel the need
to call in an arson investigator.

On September 15, 1995, there was a third fire.
Again, the fire was at Nanny's.  Investigators Morabito
and Phillips were again called to the scene.  The fire
had occurred in an alcove leading to the rear basement
door of the building in which Nanny's is located.  In

the area of the fire the smell of gasoline was detected. A melted plastic container, smelling of gasoline, was found in the burned debris near the basement door. In the alcove surrounding the basement door there was an opening in a brick wall. The small enclosed area inside this opening also smelled of gasoline and a second plastic container containing a liquid was found there. In addition, a plastic bag and a small piece of cloth were found in the alleyway leading to the rear of the store. The bag, cloth and the liquid in the second plastic container tested positive for gasoline. Investigator Phillips testified that, in his expert opinion, the fire in the rear of Nanny's was similar to the fire at M & B Grocery Store as both were intentionally set with gasoline carried in plastic containers and small pieces of cloth were found at both scenes.

While investigating the fire at Nanny's on September 15, 1995, both investigators decided to further investigate the fire which had occurred on the roof of Nanny's on September 13, 1995. Upon closer inspection, an irregular burn pattern was discovered on the roof in the area where the September 13, 1995 fire occurred. Investigator Phillips testified that this indicated that the fire was caused by a flammable liquid being tossed onto the roof. This expert opinion was bolstered by the fact that there was "streaking" on the side of the building indicating that a flammable liquid had been thrown onto the roof and, while ignited, had run down the side of the building. Despite Phillips opinion that the fire on September 13, 1995, was started by a Molotov cocktail, unlike the other two fires, no evidence, such as plastic jugs or cloth, was found.

Based upon these facts, defendant was indicted on the first and third fires, but not on the September 13, 1995 fire. Prior to the commencement of trial, the State indicated its intention to introduce evidence of the fire on September 13, 1995. Pursuant to N.J.R.E. 104(a), the trial court held a hearing out of the presence of the jury to determine the admissibility of such evidence, reserving her decision until further trial testimony was presented. Later, after hearing arguments from counsel, the trial court ruled that evidence of the September 13, 1995 fire was admissible pursuant to N.J.R.E. 404(b) under the test set forth in

State v. Cofield, 127 N.J. 328, 605 A.2d 230 (1992).
Defendant was convicted of second-degree aggravated
arson at Nanny's on September 15, 1995, along with a
disorderly persons offense of criminal mischief and of
retaliation.

See State v. Byard, 328 N.J. Super. 106, 109-113 (App. Div.),

cert. denied 165 N.J. 490 (2000)(internal footnote omitted).

2.   Procedural Background

A Passaic County Grand Jury returned an indictment against

Petitioner, charging him with the following six offenses related

to the events which transpired on or about September 5, 1995

through September 15, 1995: first-degree arson for hire, contrary

to N.J.S.A. 2C:17-1d (count one); second-degree attempted

aggravated arson, contrary to N.J.S.A. 2C:5-1, 2C:17-1a(2), and

2C:2-6 (count two); second-degree aggravated arson, contrary to

N.J.S.A. 2C:17-1a(1) or (2) and 2C:2-6 (count three); second-

degree aggravated arson, contrary to N.J.S.A. 2C:17-1a(2) and

2C:2-6 (count four); fourth-degree criminal mischief, contrary to

N.J.S.A. 2C:17-3a(1) (count five); and fourth-degree retaliation

against a witness, contrary to N.J.S.A. 2C:28-5b (count six).

Petitioner was tried by jury from March 10 through March 27,

1998.  He was found not guilty of Counts 1, 2, and 3, and guilty

of Counts 4, 5, and 6.  With respect to Count 5, the jury found

defendant not guilty of the charged offense of the fourth-degree

criminal mischief, but convicted him of the disorderly persons

offense of criminal mischief.  Petitioner was found guilty of two

of the four acts alleged in the charge of retaliation: threatening to kill Jose Muñoz and setting fire to his store.

Petitioner was sentenced on May 19, 1998, pursuant to an extended term, to twenty years with a ten-year period of parole ineligibility on the arson conviction, and to concurrent terms of eighteen months with nine months parole ineligibility for the fourth-degree offense of retaliation and six months for criminal mischief.  These concurrent terms were imposed consecutively to the sentence on the arson conviction.

Petitioner appealed the conviction and sentence to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  On February 3, 2000, the Appellate Division affirmed Petitioner's conviction and sentence.  The New Jersey Supreme Court denied certification on July 13, 2000.

In July of 2001, Petitioner filed a state petition for post-conviction relief ("PCR").  Counsel was appointed, the PCR court held a hearing to determine if an evidentiary hearing was warranted.  The PCR court denied relief on March 7, 2005. Petitioner appealed the denial of PCR relief, and the Appellate Division affirmed the denial on November 20, 2006.  The New Jersey Supreme Court denied certification on June 21, 2007.

Petitioner filed this habeas petition on October 22, 2007. On November 2, 2007, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  An

7

order to answer was issued and Respondent filed a motion to dismiss for failure to meet the statute of limitations, which was denied by Opinion and Order dated June 25, 2008.  Respondent filed an answer to the petition and state court record on July 7, 2008.

Petitioner asserts the following seven grounds for relief in his habeas petition:

1.   Prosecutorial misconduct because Petitioner was convicted of a crime for which he was not indicted, and the evidence was insufficient.

2.   Violation of Petitioner's right to confront his accuser, as the trial judge allowed Whitfield's testimony by videotape outside the presence of the jury.

3.   Ineffective assistance of counsel, as Petitioner's lawyer did not investigate or interview witnesses on his behalf, didn't prepare for trial, and didn't call witnesses on his behalf.

4.   Trial judge failed to grant a mistrial even though two jurors fell asleep during trial.

5.   Petitioner's sentence was excessive.

6.   Prosecutorial misconduct because the prosecutor used the closing statement to speak of alleged conspirator "Chickie" who never took the stand.

7.   Judicial bias because the judge raised her voice at Petitioner in front of the jury and used a tone towards him indicating that she did not like him.  Also, the judge commented about Petitioner's twin brother being a criminal.

(Petition, ¶ 12).  It appears that the claims have been exhausted in the state courts.  Nonetheless, this Court finds that

Petitioner's claims are clearly meritless.  Thus, the petition will be denied.[2]

## DISCUSSION

**A.    Standards Governing Petitioner's Claims.**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[2]  Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding Petitioner's failure to exhaust his state court remedies.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v. Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. See id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of

10

inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  See Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000); see also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any

11

supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.   Claim of Prosecutorial Misconduct and that Verdict Was Against Weight of Evidence (Ground 1).**

Petitioner claims in Ground One that prosecutorial misconduct occurred because the only evidence connecting him to the crime was the testimony of Whitfield, "who didn't know [him] and was lying and admitted the Prosecutor came to her with [his] photo telling her to say [he] paid her."  He also claims that prosecutorial misconduct occurred when he was "convicted of a crime that [he] was not indicted on."  (Petition, ¶ 12A).

Petitioner's claim that he was convicted of a crime for which he was not indicted has no merit.  Assuming, however, the Petitioner is inartfully attempting to reconstruct his argument to the Appellate Division on direct appeal, that evidence of the September 13, 1995 fire was admitted at trial although he had not been indicted for crimes concerning that fire, his claim is without merit.

On direct appeal, Petitioner argued that his convictions should be reversed because evidence of the September 13 fire was not admissible as "other crimes evidence" under the New Jersey Rules of Evidence.  The Appellate Division found the evidence was

12

not "other crimes" evidence, but rather was admissible as part of the res gestae. See Byard, 328 N.J. Super at 114 (citing N.J.R.E. 404(b); State v. Cherry, 289 N.J. Super. 503 (App. Div. 1995); State v. Ortiz, 253 N.J. Super. 239 (App. Div.), certif. denied, 130 N.J. 6 (1992).

Under federal law, it is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))). Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. See Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001). In this case, Petitioner has demonstrated neither a state evidentiary error, nor that he received a fundamentally unfair trial.

Next, Petitioner's claims that there was not sufficient evidence to convict him is construed by this Court as a claim that the jury's verdict was against the weight of the evidence. Such a claim may raise a due process concern. However, only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n.16. See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998). As noted above, state court factual determinations are presumed to be correct. See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

Here, the evidence, including the testimony of Whitfield, expert witnesses, and Muñoz, supports the conviction. The fact that Petitioner does not agree with the jury's finding that the state witnesses were credible, and chose to believe the State's witnesses, does not remotely satisfy the standard for finding that the verdict is not supported by sufficient evidence. Petitioner is not entitled to the writ with respect to this claim.

14

**C.  <u>Claim Regarding Videotaped Testimony (Ground 2).</u>**

In Ground 2 of his petition, Petitioner asserts that the trial judge improperly allowed Whitfield's testimony "to be videotaped outside the presence of the jury alleging she might have TB and HIV although me, my attorney, the prosecutor, sheriff officer, stenographer and judge [were] still present in the court room." (Petition, ¶ 12B).  Petitioner argues that this violated his right to confront his accuser in front of a jury of his peers.

This matter was extensively reviewed during Petitioner's PCR motion and on appeal of the denial of PCR.  As explained by the Appellate Division:

> The primary issue raised in defendant's PCR petition concerns the trial court's decision to permit Teresa Whitfield, a key State's witness, to testify by videotape.  The judge made that determination based on medical information she had received indicating that Whitfield may have had tuberculosis.

> At the time, the trial had been ongoing for more than a week.  The morning of Whitfield's proposed testimony, Thursday, March 19, 1998, the prosecutor informed the judge that according to Whitfield's radiologist, an x-ray showed that Whitfield had a spot on her lung that may have been tuberculosis.  Whitfield had been given a sputum test, but it would have taken ten to fourteen days to receive the results.  If the results were positive, Whitfield would have potentially required additional treatment.  Though the judge also received information that the risk of Whitfield's transmitting the disease to others would be negligible, she nevertheless did not believe the jury should be placed at risk of contracting tuberculosis.  Consequently, the judge ordered that Whitfield's testimony be taken in an adjoining courtroom.  The judge, the prosecutor, defendant and his attorney would

15

be present; and the proceedings would be videotaped.
While she was testifying, Whitfield would wear a
protective mask.

Before the jury viewed the videotape, the judge
instructed the jury as follows:

Miss Teresa Whitfield ... is going to ...
testify to one of the counts [relating] to,
allegedly Mr. Byard hiring her to set the
first grocery store on fire....

There has been some question in the last week
as to whether she has tuberculosis, and
obviously I would never ever put the jury in
any risk.  We have been gathering records,
attempting to gather records, attempting to
have her tested.

My understanding is that ... an x-ray this
morning indicates that there is a spot on her
lung which could be tuberculosis, and there's
an x-ray in January that could be indicative,
but we're not sure and it would take testing
that would take at least another two weeks.

Now, I am satisfied from the medical
information that I have that it is a
negligible risk.  If she is wearing a mask[;]
however ... you didn't sign on ... for a
negligible risk....  Since I am satisfied
it's a negligible risk, what we are going to
do this afternoon is videotape her testimony
in another courtroom without the jury there,
and we're going to play the testimony for you
tomorrow morning.

I am not putting the jury in even a
negligible risk....  My responsibility is to
protect everyone.  She may or may not have
it.  If she does have it my understanding
[is] it's a very negligible risk and wearing
a mask will minimize it further.

So we're going to do the testimony, but I don't want the jury
worrying about it, so we're going to videotape her testimony....
[I]t will be done in another courtroom.  I will be on the bench.
The defense attorney and the Prosecutor will question her; the

16

defendant will be here.  It will be completely videotaped and
played for you tomorrow morning.  We're going to do that at 1:30.
                                     ....

          ... The credibility of Miss Whitfield is
          entirely up to you.  The State will conduct
          direct and the defense will conduct cross and
          it will be the jury's decision.

          This is simply my decision regarding the
          health issue.  The attorneys can ask
          questions related to what may have happened
          in the last week, both of them can ask
          questions and you will have the full
          testimony for your consideration....

          Whitfield testified according to the procedure
     established by the court.

See State v. Byard, A-4668-04T4 (App. Div. Nov. 20, 2006) at pp.

3-6.  Petitioner's argued to the Appellate Division that the

trial court's decision to permit the videotaping of the testimony

was in error, and that appellate counsel was ineffective for

failing to raise the issue on direct appeal.[3]  With respect to

Petitioner's argument that the trial court erred in permitting

the videotaped testimony, the Appellate Division ruled:

_____

          [3]  Petitioner does not raise the ineffective assistance of
appellate counsel claim in this habeas petition; however, this
Court notes that the Appellate Division rejected that claim,
based on Strickland, see this Opinion, infra Section D.  Thus,
even if the claim were raised here, this Court would find that
Petitioner had not shown, as required by 28 U.S.C. § 2254(d),
that the actions of the trial court "resulted in a decision that
was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme
Court of the United States," or "resulted in a decision that was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding."

                            17

Here, we agree with the trial judge that under the circumstances presented, Whitfield qualified as an unavailable witness so as to permit taking her testimony by videotape.  Defendant was not deprived of his right to confrontation.

* * *

. . . While the witness was not literally unavailable, the court did not abuse its discretion in permitting the videotaped testimony under the circumstances. Defendant was present in the courtroom when the witness testified and was able to confront and cross-examine her.  The judge and both counsel were present.  Only the jury was not in the courtroom at the time. Nevertheless, the jury had an opportunity to observe the entire proceeding as if it had been present.

The trial judge reasoned that the jury should not be exposed to tuberculosis.  The trial had been in progress for more than a week.  The court did not find that a postponement was warranted, especially because, if tuberculosis was confirmed by the sputum test, the witness would likely have required additional treatment, further delaying her testimony.  Nor, given the length of the trial and the availability of a solution to the problem, did the court consider it necessary to declare a mistrial.  These were reasonable decisions.

The medical information provided to the judge was sufficient to support the court's conclusion that the witness was for all intents and purposes unavailable. The judge was entitled to rely on what were essentially uncontested representations concerning the witness's medical condition.  The court adequately instructed the jury as to the reasons for the videotaped testimony. Under these circumstances, the judge protected the rights of all parties to the proceedings.  She did not abuse her discretion.

See State v. Byard, A-4668-04T4 (App. Div. Nov. 20, 2006) at pp.

8-10.

The Sixth Amendment is made applicable to the States by the

Fourteenth Amendment.  See Gideon v. Wainwright, 372 U.S. 335

18

(1963).  The accused's right to be confronted with the witnesses against him requires a "face-to-face" meeting; "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970). Indeed, the right to be present at every critical stage of a trial is a "fundamental right of each criminal defendant," Rushen v. Spain, 464 U.S. 114, 117-118 (1983), which is rooted in both the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments.  See United States v. Canady, 126 F.3d 352, 360 (2d Cir. 1997) (citations omitted).

In this case, this Court agrees with the Appellate Division that Petitioner's right to confrontation was not violated:  it is apparent that Petitioner was able to confront Whitfield as he was present in the courtroom for the testimony, his attorney was present, and his attorney was able to cross-examine the witness. The trial judge's decision to have the testimony videotaped was sound considering the circumstances.

Additionally, if Petitioner is asserting that the state court violated some other constitutional right in allowing the testimony to be videotaped, as explained in this Opinion, supra, Section B, under federal law, it is well-established that the violation of a right created by state law is not cognizable as a

19

basis for federal habeas relief.  See Estelle v. McGuire, 502
U.S. 62, 67-68 (1991) ("We have stated many times that 'federal
habeas corpus relief does not lie for errors of state law.'"
(quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).
Accordingly, Petitioner cannot obtain relief for any errors in
state law evidentiary rulings, unless they rise to the level of a
deprivation of due process.  See Estelle, 502 U.S. at 70 ("'the
Due Process Clause guarantees fundamental elements of fairness in
a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-
64 (1967)).  Here, Petitioner's trial was fundamentally fair, and
there was no due process violations.

Petitioner is not entitled to the writ on this claim, as he
has not shown, as required by 28 U.S.C. § 2254(d), that the
actions of the trial court "resulted in a decision that was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States," or "resulted in a decision that was based on
an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."

D.   **Claim of Ineffective Assistance of Counsel (Ground 3).**

Petitioner asserts various claims of ineffective assistance
of trial counsel, including: counsel was ineffective, failed to
properly investigate the case, failed to interview witnesses, and

failed to call any alibi witnesses or present a defense. (Petition, ¶ 12C).

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

21

> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel, the
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  See Strickland, 466 U.S. at
687.  Prejudice is shown if "there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.
See id. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  See id. at 697; see
also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

Petitioner raised his ineffective assistance of trial
counsel arguments during his PCR motion.  Petitioner argued that
a witness to the incident where Petitioner began to turn over
racks inside the store should have been interviewed.

Petitioner's PCR counsel presented this argument, and the Court found that trial counsel's decision was "a strategic decision and I don't see how her testimony would have really meant anything. It- it might have helped the State just to corroborate Mr. Ascervado [sic] and Mr. Munoz that he committed substantial criminal mischief inside the store." <u>See</u> Transcript of January 27, 2005 at p. 36.

As to other witnesses that weren't interviewed, the PCR judge also found that "there was very good reason strategically not to call them.  As the Prosecutor says, they might have ended up helping the State." <u>See</u> Transcript of January 28, 2005 at pp. 29-30.   The PCR judge found: "As far as the cumulative error, I ruled on the witnesses that I can rule on.  I find no – no ineffective assistance of counsel either individually or cumulatively.  And those decisions, indeed, if that was the information the people were going to offer, I think he was better not to call them." <u>See</u> <u>id.</u> at p. 34.  This Court notes that although the Appellate Division concentrated on one ineffective assistance of counsel issue in its Opinion affirming the denial of the PCR motion, the arguments were presented and the Appellate Division affirmed the PCR judge's ruling, relying on <u>Strickland</u> in doing so.  <u>See</u> <u>State v. Byard</u>, A-4668-04T4 (App. Div. Nov. 20, 2006).

Furthermore, the state court found that even if the proposed witnesses testified, they would not help the defense, so that the decision by trial counsel was strategic, in accordance with Strickland.  Additionally, the arguments advanced by Petitioner for habeas relief do not meet the second prong of Strickland in that they would not have altered the outcome of the trial.  There was strong evidence against the Petitioner, including Whitfield's testimony, expert testimony, and the testimony of the store owners.

In this case, a review of the record shows that counsel was competent and did not perform deficiently.  As noted, Petitioner was found not guilty of three of the six charges in the indictment.  A review of the closing argument shows that counsel went through all of the evidence presented and zealously advocated for Petitioner, and tried to convince the jury to discredit the State's case, especially the testimony of Whitfield.  See Transcript of March 23, 1998 at pp. 157-187. This Court finds that counsel did not perform deficiently, and that the Strickland standard for habeas relief was not met.

Therefore, as the record reveals that the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an

24

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Petitioner's claims will be denied.

## E.   Claim Regarding Sleeping Jurors (Ground 4).

Petitioner argues that "on two separate occasions two jurors went to sleep during the trial and the judge had to have the sheriff's officer wake them.  The judge erred by not only replacing them but by not calling for a mistrial[.] Also my lawyer failed by not requesting [a mistrial]."  (Petition, ¶ 12D).

The PCR court examined this claim, finding:

. . . As far as any allegation that any jurors were sleeping, I totally reject that because if I thought a juror was sleeping, unless I thought it was an absolutely momentary thing where the juror caught himself or herself right away, I would bring the juror inside with the attorneys and say you are tired.  Do you not feel well?  I wouldn't embarrass the juror; I would do it privately with the attorneys and the Defendant, but I would certainly address it and no such thing exists either in a transcript or in my independent recollection.

See Transcript dated January 28, 2005 at p. 30.

This Court agrees after a review of the record that there is nothing indicated in the record that jurors were sleeping during

trial.[4]   This claim will be rejected, as Petitioner has not
shown, as required by 28 U.S.C. § 2254(d), that the actions of
the trial court "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," or "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."

**F.   Claim Regarding Excessive Sentence (Ground 5).**

Petitioner argues that his sentence was excessive because he
was subjected to an "extended term", and that the judge did not
find mitigating factors at his sentencing.  (Petition, ¶ 12E).

A federal court's ability to review state sentences is
limited to challenges based upon "proscribed federal grounds such
as being cruel and unusual, racially or ethnically motivated, or
enhanced by indigencies."  See Grecco v. O' Lone, 661, F. Supp.
408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to
a state court's discretion at sentencing is not reviewable in a

---

[4]   There was discussion during the PCR hearing that
Petitioner may have been sleeping during trial, and that
Petitioner's attorney, out of the presence of the jury, indicated
that he noticed "some jurors with their heads back."  See
Transcript dated January 28, 2005 at p. 24.  The PCR judge, who
was also the trial judge, noted: "I have no recollection of any
jurors whatsoever really doing anything or giving any demeanor
that they were asleep or dozing or whatever because I would
address that right away.  I think [Petitioner's counsel] was
doing his best to minimize what his client was allegedly doing,
which is – was in my mind almost dozing off."  See id.

federal habeas proceeding unless it violates a separate federal
constitutional limitation.  See Pringle v. Court of Common Pleas,
744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a);
Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497
U.S. 764, 780 (1990).

        The Appellate Division examined Petitioner's sentencing
claims on direct appeal and found that the sentencing judge
committed no error in imposing the sentence.  See Byard, 328 N.J.
Super. at 115-116.

        As Petitioner's sentence does not violate any separate
constitutional limitation, the Appellate Division's decision is
neither contrary to nor an unreasonable application of clearly
established federal law as determined by the Supreme Court of the
United States.  Petitioner is not entitled to relief on this
claim.

**G.    Claim Regarding Prosecutorial Misconduct (Ground 6).**

        In Ground 6, Petitioner argues that the prosecution used a
closing statement to speak of an alleged conspirator, "Chickie",
who never took the stand, and other claims regarding misuse of
closing arguments.

        This Court has reviewed the closing argument of the State.
See Transcript of March 23, 1998 at pp. 187-231.  The prosecutor,
after summarizing the evidence, submitted that it was Chickie who
set the building on fire, when initially, the "wrong" grocery

27

store was set on fire on September 11, 1995.  <u>See</u> Transcript, p. 219.

Under United States Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel.  <u>Darden</u>, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

In the instant case, the prosecutor's submission that Chickie set the first fire has no effect on Petitioner's convictions.  Petitioner was found not guilty of the September 11, 1995 arson charges.  Whether it was Chickie who set that fire or Whitfield, it did not concern Petitioner's trial.  The prosecutor's comments were not so offensive as to infect the entire trial, violate due process, or render Petitioner's

28

conviction unfair.  Further, there was sufficient evidence to convict Petitioner, the credibility of which was weighed by the jury.  In light of the entire trial and with the evidence against Petitioner, including the store owner's testimony and Whitfield's testimony, the Court is satisfied that the prosecutor's allegedly offensive action by noting that Chickie had started the first fire, as opposed to Whitfield, did not violate Petitioner's right to a fair trial.

Additionally, the trial judge made clear in instructing the jury that they were the trier of facts.  The trial judge charged:

> Now, in my preliminary charge when we first started the case I explained to you that you are judges of the facts, and as judges of the facts you are to determine the credibility of the various witnesses as well as the weight to be attached to their testimony. You and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses and the weight to be attached to the testimony of each witness.
>
> Now, regardless of what counsel have said or I may have said or may say in recalling the evidence in this case, it is your recollection of the evidence that should guide you as judges of the facts.  Arguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence. Although the attorneys may point out what they think is important in this case, you must rely solely upon your understanding and recollection of the evidence that was admitted during the trial.  Whether or not the defendant has been proven guilty beyond a reasonable doubt is for you to determine based upon all of the evidence presented during the trial.

See Transcript dated March 24, 1998 at pp. 10-11.  Thus, even assuming that the prosecutor's remarks were improper, the judge's

instruction was clear and correct and prevented the prosecutor's remarks from so infecting the trial with unfairness as to make the resulting conviction a denial of due process.  Petitioner is not entitled to relief on this claim.

**H.   Claim of Judicial Bias (Ground 7).**

Petitioner claims in Ground 7 that the trial judge erred in raising her voice, and in the tone of her voice, and by mentioning that his twin brother, who was in the courtroom during the trial, was previously incarcerated.  Petitioner argues that this gave the jury the impression that because his brother was a criminal, that he must also be one.  Petitioner argues that the evidence presented was not sufficient, and that the judge showed her bias by "not only trying [him] for a crime [he] didn't do but [a crime] that [did] not ever occur."  (Petition, ¶ 12G).

In order to demonstrate judicial misconduct for purposes of habeas relief, a petitioner must show "actual bias" and that he was treated "unfairly" by the trial judge.  See Marshall v. Hendricks, 103 F. Supp.2d 749, 799 (D.N.J. 2000)(Irenas, J.), rev'd in part on other grounds, 307 F.3d 36 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003)(citation omitted).  Adverse rulings on motions and objections are not sufficient to prove judicial bias.  See id. (citation omitted).  Rather, "there must be an extremely high level of interference by the trial judge which creates a pervasive climate of partiality and unfairness."  Id.

30

(citation omitted).  "A mere allegation or the mere appearance of bias does not establish bias."  Id. (citation omitted).

In this case, a review of the record reveals no bias on the part of the trial judge.  It is noted that the trial judge had the parties stipulate, before trial, that they would not advance the argument that Petitioner's twin brother was the person who committed the crimes charged, as Petitioner's brother was incarcerated at the time of the offenses.  See Transcript dated March 10, 1998 at p. 7.  During summations, Petitioner's attorney mentioned that, "I mean obviously she [Whitfield] probably knows who he is.  She may have known that he had a twin brother."  See Transcript dated March 23, 1998 at p. 182.  The prosecutor noted in his summation afterward that: "And we have a stipulation, so there's no confusion, that it would be impossible for that twin brother to be available in the City of Paterson from June 12, 1995, until after October of 1995.  So we're not talking about no [sic] twin brother but she knows he has a twin brother."  See id. at p. 212-13.

The petitioner has not demonstrated that the judge was biased towards his socioeconomic status, race, or that the judge created a "pervasive climate of partiality and unfairness."  In fact, there is no evidence in the record of interference, partiality or unfairness.  Petitioner is not entitled to relief

31

on this claim, as he has not demonstrated a constitutional violation or other grounds for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


S/ Faith S. Hochberg
FAITH S. HOCHBERG
United States District Judge

Dated: January 15, 2009